**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHONY SHAFFER <br> 8613 Etta Drive <br> Springfield, Virginia 22152 <br><br> Plaintiff, <br><br> v. <br><br> DEFENSE INTELLIGENCE AGENCY <br> Washington, D.C. 20340 <br><br> and <br><br> DEPARTMENT OF DEFENSE <br> Washington, D.C. 20301 <br><br> and <br><br> CENTRAL INTELLIGENCE AGENCY <br> Washington, D.C. 20505 <br><br> Defendants. | Civil Action No: 10-_____ |

## COMPLAINT

Plaintiff Anthony Shaffer brings this action against defendants Defense Intelligence Agency, Department of Defense and Central Intelligence Agency for injunctive and declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the First Amendment to the Constitution of the United States.

The defendants unlawfully imposed a prior restraint upon the plaintiff by obstructing and infringing on his right to publish unclassified information in his *New York Times* best selling book <u>Operation Dark Heart: Spycraft and Special Ops on the Frontlines of Afghanistan and the Path to Victory</u> (St. Martin's Press, 2010)("<u>Operation Dark Heart</u>"). The defendants unlawfully required the redaction of information from approximately 250

out of 320 pages of the published book. A paperback edition of Operation Dark Heart is now scheduled for publication in or around October 2011, and the plaintiff challenges the defendants continuing and unlawful conduct in violation of his right to free speech under the First Amendment of the U.S. Constitution.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Anthony Shaffer ("Shaffer") is a highly experienced and decorated intelligence officer with 25 years of field experience. He was formerly employed by the defendant Defense Intelligence Agency from 1995 - 2006 and is also a Lt. Col. in the U.S. Army Reserves. He is required by virtue of a secrecy agreement to submit all of his writings for prepublication review.[1] In 2001, just after the 9/11 attacks, he returned to active duty for a 30 month period and had two successful combat tours to Afghanistan during which he participated in the search for senior Al Qaeda leadership. In recognition of successful high risk/high gain operations he received the Bronze Star Medal for performance as an Operations Officer. Shaffer is currently a Fellow and Special Lecturer at the Center for Advanced Defense Studies in Washington, D.C. and appears regularly as an expert commentator on network and cable television and radio, particularly with

---

[1] This Complaint was drafted entirely by legal counsel who is not subject at this time in this specific case to any prepublication review requirement. Nor has counsel ever reviewed an unredacted version of Shaffer's book.

respect to military matters. He is a citizen of the United States and resides in the Commonwealth of Virginia.

4. Defendant Defense Intelligence Agency ("DIA") is an agency of the United States and subject to the jurisdiction of this Court. Its' actions have prevented Shaffer from publishing portions of his book.

5. Defendant Department of Defense ("DoD") is an agency is an agency of the United States and subject to the jurisdiction of this Court. Its' actions have prevented Shaffer from publishing portions of his book. The DoD also has legal authority over the National Security Agency ("NSA"), U.S. Special Operations Command, Department of Army and DIA, all of which are operational components of DoD.

6. Defendant Central Intelligence Agency ("CIA") is an agency of the United States and subject to the jurisdiction of this Court. Its' actions have prevented Shaffer from publishing portions of his book.

## FACTS

7. Shaffer was mobilized in support of Operation Enduring Freedom as an Army Reserve Officer from December 2001 to June 2004.

8. Shaffer started writing "<u>The Darker Side of the Force: A Spy's Chronicle of the Tipping Point in Afghanistan</u>", which was the original title for what was later renamed <u>Operation Dark Heart</u>, in or around February 2007. The book offers a direct, detailed, eyewitness account of the 2003 "tipping-point" of the war in Afghanistan and provides an unemotional examination of the events and decisions where mistakes were made in strategy. It recommends a detailed, alternate strategy to the current failing Counterinsurgency strategy that could result in victory in Afghanistan. Additionally, the

book details protected disclosures made to the Executive Director of the 9/11 Commission on pre-9/11 intelligence failures (based on information developed through Operation "ABLE DANGER") while in Afghanistan in October 2003. Some of the events described in the book led to Shaffer being awarded the Bronze Star.

9. In or around December 2008, Shaffer hired a then current *Washington Post* reporter and author, Jacqui Salmon, to serve as his ghost writer. Ms. Salmon conducted numerous independent interviews, relied upon unclassified documents, read books on the topic, and created the story line and chapter structure based on the personal observations and commentary provided by Shaffer.

10. In February 2009, Shaffer entered into an agreement with Thomas Dunne Books/St. Martin's Press ("St. Martin's Press" or "publisher") to publish Operation Dark Heart.

11. In March 2009, Shaffer notified his Army Reserve chain-of-command that he was writing a detailed book on his experience in Afghanistan and requested guidance on how to comply with all appropriate security and ethical regulations. His Army Reserve leadership consulted with the 80th Training Command and U.S. Army Reserve Command and instructed him on what they understand the proper process to be in order to fully conform to security standards outlined in AR 350-1 so that no classified information would be contained or published in the book.

12. In April 2009, two highly qualified Army Reserve officers – a military attorney with the rank of Major whose civilian employment is with the U.S. Army Special Operations Command and a Colonel who works as a civilian contractor for the Director of National Intelligence – were appointed to conduct the review of the book.

13. A copy of Shaffer's draft manuscript was first submitted in June 2009 to his Army Reserve chain-of-command.

14. In or around October 2009, Shaffer made multiple national public announcements on Fox News, MSNBC, and the Jerry Doyle Radio program, all of which, upon information and belief, are routinely viewed by the defendants, that his book on Afghanistan was nearing completion and undergoing an Army security review for publication in early to mid-2010.

15. By Memorandum dated December 26, 2009, the Staff Judge Advocate for the Headquarters 94th Training Division, U.S. Army Reserve Center, Fort Lee, Virginia, stated that based on his review of the manuscript it was his understanding that Shaffer used only unclassified information and open sources in his memoir. He provided a favorable legal opinion that Shaffer could accept compensation for his memoir, a fact that Shaffer relied upon in good faith.

16. By memorandum dated January 4, 2010, the Assistant Division Commander, who was a Colonel, Headquarters 94th Training Division, U.S. Army Reserve Center, Fort Lee, Virginia, issued a favorable legal and operational security review of the memoir and approved its publication. With receipt of this letter Shaffer was told he had complied with the instructions provided to him by the Army Reserve with respect to all legal obligations he was required to take for a classification review of his manuscript, an assertion that Shaffer also relied upon in good faith. In fact, Shaffer understood that submission through his chain-of-command with the U.S. Army Reserve, the governmental entity that held his security clearance, fully complied with any and all pre-publication review requirements that might obligate him.

17. Following Shaffer's receipt of the final favorable approval of the U.S. Army Reserve's security and ethical reviews, on or about February 23, 2010, a copy of the manuscript was forwarded to the publisher which scheduled a publishing date of August 31, 2010. At this time full legal control of the publication of the manuscript was in the hands of the publisher.

18. During Spring 2010, Shaffer announced during multiple national interviews on such television networks as Fox News, MSNBC, BBC, Sky News, Alhurra TV, al Jazerra English Language and numerous radio programs, many of which are monitored by the defendants, that his book had been formally approved by the U.S. Army Reserve and would be published by August 31, 2010.

19. DIA claims to have first learned of Operation Dark Heart on or about May 27, 2010. Upon information and belief, numerous DIA officials knew of Shaffer's memoir months before this date.

20. On June 18, 2010, Shaffer received a phone call from his commanding general of the 94th Division and was informed that DIA was demanding access to the already cleared manuscript. He was told that the Division's decision was not to share it with DIA based on its prior retaliatory activities against him, particularly with respect to its ongoing refusal to re-adjudicate his security clearance, and because of concerns that DIA had waited until the very last minute to insinuate itself into the process. The Army Reserve believed that the book had been reviewed and approved as having been completely clear of any classified information.

21. At no time did Shaffer ever interfere with or request that the Army Reserve not provide DIA with a copy of Operation Dark Heart. Although DIA was well aware of how

to contact Shaffer and/or his attorney, at no time did any DIA official ever request a copy of the memoir directly from Shaffer, his attorney, his literary agent or publisher. Had a copy been requested by DIA, Shaffer and/or his attorney would have willingly and immediately complied.

22. On July 10, 2010, Shaffer was requested by his Army Reserve leadership to provide a copy of <u>Operation Dark Heart</u> to the Army and he immediately did so.

23. On July 11, 2010, Shaffer was notified by his Army Reserve leadership that the Department of the Army had decided to provide a copy of <u>Operation Dark Heart</u> to DIA but that the Army Reserve was standing by its approval for the book to be published. It was noted that there was "tremendous pressure" being brought upon the Army by DlA to withdraw the Reserve's approval for the publication of the book. Shaffer was told to be aware there is a "huge target on your back…"

24. By July 14, 2010, DIA had been provided a copy of <u>Operation Dark Heart</u> from the Army's General Counsel's Office and had disseminated copies to, among others, U.S. Special Operations Command, CIA and the NSA. Following its preliminary review DIA claimed to have identified significant classified information contained within the memoir, as did the other entities as well.

25. On July 22, 2010, a DIA public affairs official called Shaffer and informed him that DIA had read the manuscript and claimed it contained "classified information". By this time, the publisher had already arranged for numerous pages of the book to be available for the public to review on *Amazon.com*.

26. On August 6, 2010, Lieutenant General Ronald Burgess, Director, DIA, sent a memorandum to Lieutenant General Richard P. Zahner, Deputy Chief of Staff for

Intelligence (G2), Department of Army, and requested that the Army take all necessary steps to revoke the favorable operational and security ethics review provided by the 94th Training Division. Additionally, it was requested that Shaffer be ordered to formally submit his memoir for an information security review by defendant DoD, as well as take all necessary action to direct his publisher to withhold publication pending review.

27. On or about August 6, 2010, the Department of Army rescinded the Army Reserves' favorable approval for the publication of Operation Dark Heart.

28. On August 10, 2010, Shaffer was notified by the Army Reserve via e-mail that the "Department of the Army has concluded that the clearance review conducted by the 94th Division was insufficient, and that you will need to request in writing a review by the Department of the Army."

29. Upon request, by letter dated August 11, 2010, St. Martin's Press sent the Department of Army a copy of the finished book, which was scheduled to be published in less than three weeks.

30. On Friday, August 13, 2010, just as St. Martin's Press was readying its initial shipment of the book, defendant DoD contacted it to express its concern that publication of Operation Dark Heart could cause damage to U.S. national security. The publisher agreed to temporarily delay publication to allow discussions between the defendants and Shaffer to take place.

31. Shaffer, as the author, had absolutely no legal control over the publication of Operation Dark Heart and could only offer recommendations that the publisher, which was willing to cooperate with the defendants as much as possible, could accept or reject as it saw fit.

32. Notwithstanding the decision to delay publication, the defendants were explicitly notified at the outset that several dozen review copies of <u>Operation Dark Heart</u> had already been distributed and that it would be virtually impossible to retrieve those copies, at least not without arousing suspicion. Thus, whether the defendants sought to block publication of or even negotiate redaction of text from the book, it was inevitable that someone would likely post and reveal the alleged "classified" information online.

33. On August 16, 2010, DoD and DIA officials, to include its General Counsel George Peirce, met with representatives of the publisher in New York City to express its continuing concerns regarding publication of <u>Operation Dark Heart</u>.

34. On August 16, 2010, Shaffer's counsel notified defendant DoD's counsel via e-mail that:

> My client and I are more than willing to cooperate with the USGOVT to ensure there is no legitimately classified information within his book. It is in no ones interest for this to occur. That is exactly why Mr. Shaffer timely and properly submitted his manuscript for prepublication review through his Army Reserve chain of command, which held his current clearance, thereby fulfilling his lawful requirement.
>
> That said, I am sure we can argue about the process that led to the initial issuance and then rescission of the approval to publish, and no doubt there will be opportunity to do so in the future, but we would like to focus on the present situation and see if we can arrive at an amicable resolution that would satisfy all concerned and allow the book to be publicly sold with as little delay as possible.

35. Although Shaffer's attorney informed defendant DoD that he currently maintained a Secret level clearance and desired to participate in any meetings involving his client in order to facilitate any negotiations, the defendants refused to allow counsel access to the first edition of <u>Operation Dark Heart</u>. DoD did, however, allow the publisher's attorney to participate in classified conversations regarding the contents of the book. Upon information and belief, the defendants refused to allow Shafer's attorney

access to or participation in any substantive conversations concerning the alleged "classified information" in order to gain a litigation advantage should the matter later proceed to court.

36. Shaffer was originally informed that the defendants had identified eighteen items of concern with his book, and he was requested to meet at the Pentagon with officials of the defendants on August 19, 2010, to discuss the specific text. Based on conversations between DoD and the publisher, it was understood that the meeting would involve "surgical editing" only to meet as many of the defendants' concerns as possible.

37. Shaffer fully cooperated with the defendants over the course of several meetings in August and September 2010 to negotiate any classification concerns. Contrary to the initial statements by the defendants as to the "surgical editing" that was to be undertaken, the defendants requested significant changes to include modifying information that had been previously declassified, taken completely from open sources or obtained by Ms. Salmon, Shaffer's ghost writer. As part of the negotiations Shaffer willingly agreed to modify or delete certain text, and to the extent agreement could not be reached the publisher agreed to redact the text from a revised edition.

38. Eventually, approximately 250 pages out of 320 pages of <u>Operation Dark Heart</u> were required to contain redactions in order to allegedly prevent the disclosure of classified information. Little to none of this information, however, is actually classified.

39. By on or about September 3, 2010, legal representatives of defendant DoD provided the publisher, without Shaffer's advance knowledge or consent, with an unclassified copy of <u>Operation Dark Heart</u> that the government had approved for publication in its present form. That copy was accepted by the publisher for publication.

40. On September 9, 2010, the publisher notified DoD that the book was considered complete and the pages were being sent to the printer. Notwithstanding this fact, defendant DoD continued to attempt to have Shaffer modify or delete text.

41. In or around late September 2010, defendant DoD paid nearly $50,000 to the publisher to destroy 9,500 copies of the first printing of Operation Dark Heart on the basis that publication threatened national security.

42. The publisher printed a second edition of Operation Dark Heart of approximately 50,000 copies with redactions and set a new publication date of September 24, 2010, at which time it was issued.

43. The *New York Times* purchased a review copy of the first edition of Shaffer's book from an online book seller and on September 9, 2010, it publicly broke the story of the DoD's efforts to suppress the book and the negotiations to purchase and destroy all available copies of the first edition of Operation Dark Heart (*http://www.nytimes.com/2010/09/10/us/10books.html*).

44. At the same time additional copies of the first edition that had been distributed for review started to appear for sale. One copy allegedly sold on E-bay for over $2,000.00. See "eBay Sellers Buck Defense Department & Sell Uncensored Version of Operation Dark Heart" at *http://www.mediabistro.com/galleycat/ebay-sellers-buck-defense-department-sell-uncensored-version-of-operation-dark-heart_b12647*.

45. On September 18, 2010, the *New York Times* published an article entitled "Secrets in Plain Sight in Censored Book's Reprint" (*http://www.nytimes.com/2010/09/18/us/18book.html*), in which the following, none of which has been confirmed by either Shaffer or his counsel, was claimed to be a list of some of the information that was

redacted by the defendants from the first edition of <u>Operation Dark Heart</u>. The redactions allegedly included:

- Identification of the National Security Agency's nickname as "The Fort";
- The location of defendant CIA's training facility at Camp Peary, Virginia;
- The name and abbreviation of the Iranian Revolutionary Guard Corps;
- The fact that "Sigint" means "signals intelligence";
- That Shaffer's cover name in Afghanistan was "Chris Stryker," and that the name was derived from John Wayne's character in the 1949 movie "The Sands of Iwo Jima"; and
- A description of a plan by NSA technicians to retrofit an ordinary-looking household electronic device and place it in an apartment near a suspected militant hideout in Pakistan.

46. On or about September 29, 2010, The Federation of American Scientists posted on its website at *http://www.fas.org/blog/secrecy/2010/09/behind_the_censor.html* comparison copies of pages from the unredacted first edition side-by-side to the second edition that contained redactions thereby permitting anyone to completely identify what was redacted allegedly as constituting "classified" information. A side by side comparison of the redacted vs. unredacted index of the book was posted on October 5, 2010, at *http://www.fas.org/sgp/news/2010/09/dark-index.pdf*.

47. On September 29, 2010, the *HuffingtonPost.com* posted an article entitled "'<u>Operation Dark Heart</u>': Comparing The Censored Version With The Real Thing", which stated that "Among the more unnecessary redactions: the name of 'Deliverance' star Ned Beatty – 'which is not properly classified in any known universe' -- but is blacked out on page 15 of the book. Overall, the national security classification exemplified in the new book 'does not exactly command respect,' writes [Steve] Aftergood [of the Federation of American Scientists]."

48. On October 4, 2010, the *Army Times* published an article entitled "Censored book masks sensitive operations", which is available at *http://www.armytimes.com/news*

*/2010/10/army-book-100410w/*, and undertook a before and after analysis of the information redacted from the revised edition of Operation Dark Heart.

49. St. Martin's Press has scheduled the issuance of a paperback or soft-bound edition of Operation Dark Heart for October 2011. In order to properly meet that deadline, the publisher must have a final version of the next edition by Summer 2011. The desire is to disclose as much of the text redacted from the second printing as possible given that it is unclassified.

50. Upon information and belief, defendant DIA's efforts, in particular, are part of a continuing bad faith retaliatory campaign against Shaffer that dates back to 2004 when DIA initiated a frivolous action against him to revoke his security clearance. The Army Reserve discounted the allegations and in the midst of DIA's efforts, and with full knowledge of them, nevertheless promoted Shaffer to Lt. Col. In 2005, Shaffer became a national security whistleblower when he publicly claimed that a covert Pentagon task force called "ABLE DANGER", which he was a part of, had identified Mohamed Atta, the lead hijacker in the September 11th attacks, before the assaults on New York and the Pentagon.

51. As the filing of this lawsuit occurred, the Department of Army has initiated an internal 15-6 investigation into Shaffer and the publication of his book. That investigation remains ongoing.

**FIRST CAUSE OF ACTION**
**(FIRST AMENDMENT/DECLARATORY JUDGMENT**
**- RIGHT TO PUBLISH - CLASSIFICATION CHALLENGE)**

52. Shaffer repeats and realleges the allegations contained in paragraphs 1 through 51 above, inclusive.

53. Shaffer properly submitted, pursuant to one or more secrecy agreements, his draft manuscript for prepublication review.

54. The defendants are legally prohibited from precluding Shaffer from publishing anything other than classified information.

55. The defendants claim to have identified classified information within <u>Operation Dark Heart</u> and prevented Shaffer from publishing those portions regarding which agreement could not be reached as to modification or deletion.

56. The defendants have classified a substantial amount of previously approved text, as well as forbid the publication of information supported by open source material. The consequence of this action is to threaten Shaffer that if he publishes or disseminates any information identified as classified, whether it is or not, he will be subject to legal action, which can include civil or criminal penalties, and in particular the attachment of any royalties Shaffer has or will receive from sales of the book.

57. The defendants have failed to show that Shaffer' First Amendment right to publish is outweighed by the government's interest in efficiently carrying out its mission by minimizing harms that are real, not merely conjecture.

58. The defendants have failed to demonstrate the existence of substantial government interests that would enable them to prohibit the publication of unclassified information within Shaffer' memoirs.

59. The defendants' restrictions imposed upon Shaffer have been unduly vague and were not narrowly confined to avoid infringement of his First Amendment rights. They have unnecessarily restricted unclassified speech that does not serve to protect any substantial government interest.

60. Most importantly, the defendants have failed to provide explanations with reasonable specificity that demonstrates a logical connection between the information to be deleted and any reason for classification. Nor are the claimed reasons for classification either rational or plausible. In fact, many of the asserted redactions are objectively absurd. Thus, they cannot support the defendants' attempt to censor text within Shaffer's book.

61. Because the defendants have impermissibly infringed upon Shaffer's right to publish unclassified information in <u>Operation Dark Heart</u>, they have violated Shaffer's First Amendment rights.

62. The publisher has scheduled the release of a paperback or soft-bound copy of <u>Operation Dark Heart</u> for October 2011. Due to the ongoing unlawful actions of the defendants to suppress Shaffer's First Amendment rights and prohibit the publication of unclassified information, he could suffer civil or criminal penalties if the redacted text is revealed in the forthcoming edition.

63. Shaffer desires to include only unclassified information in the forthcoming edition of <u>Operation Dark Heart</u> and the defendants are impermissibly preventing him from doing so.

64. Thus, Shaffer has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, a delay in being able to timely comment on information of public interest, and/or lost or jeopardized present or future financial opportunities, which impairs his ability to serve the public.

WHEREFORE, plaintiff Anthony Shaffer requests that the Court award him the following relief:

(1) Permanently enjoin the defendants from restraining the publication of any portion of unclassified text within future editions of Shaffer's book Operation Dark Heart;

(2) Permanently enjoin the defendants from initiating civil or criminal proceedings against Shaffer for past publication of any text within editions of Operation Dark Heart, or for any future publication of unclassified text;

(3) Declare that Shaffer possesses a First Amendment right to publish any unclassified information that was redacted from the second printing of Operation Dark Heart;

(4) Declare and find that the redacted text from the second printing of Operation Dark Heart is unclassified;

(5) Award Shaffer the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law;

(6) Award any appropriate compensation to Shaffer for any losses suffered or expenses incurred due to the defendants' actions; and

(7) grant such other relief as the Court may deem just and proper.

Date:   December 14, 2010

Respectfully submitted,

/s/ Mark S. Zaid
Mark S. Zaid, Esq.
DC Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com

Attorney for Plaintiff